**Brian Zalaznick**
**4650 Monte Bloyd Road**
**(P.O Box 27)**
**Philo, CA 95466**
**(415) 306-1839**

FILED
2021 MAR -5  AM 9:07
CLERK
U.S. BANKRUPTCY COURT
DISTRICT OF DELAWARE

February 11, 2021

Una O'Boyle
U.S. Bankruptcy Court
District of Delaware
824 Market Street, 3rd Floor
Wilmington, DE 19801

Re: Case No: 21-10016-BLS (Aura Financial Corp./Insikt, Inc.)

Dear Sirs:

Enclosed is proof of my ownership in Insikt, Inc./Aura Financial Corp. common stock. My total ownership is 248,986 shares purchased in 3 installments.

12/15 – 165,000 shares
11/16 – 28,986
4/17 – 55,000

**New mailing address:**
P.O. Box 27
Philo, CA 95466

**New physical address:**
4650 Monte Bloyd Road
Philo, CA 95466

Sincerely,

*[signature]*

Brian H. Zalaznick

# UNITED STATES BANKRUPTCY COURT
### District of Delaware
### 824 Market Street, 3rd Floor
### Wilmington, DE 19801

In Re:  
Aura Financial Corporation

Chapter: 7

303 Second Street  
Suite 550  
San Francisco, CA 94107  
 EIN: 45–4652644  
Insikt, Inc.

Case No.: 21-10016-BLS

## NOTICE THAT THERE ARE ASSETS FROM WHICH A DIVIDEND MIGHT POSSIBLY BE PAID TO CREDITORS

**YOU ARE HEREBY NOTIFIED** that there are assets from which a dividend might possibly be paid to creditors.

In order to share in any distribution, a creditor must file a proof of claim with the Clerk of the Bankruptcy Court. Claims must be filed within ninety (90) days after service of this notice.

For governmental entities, the proof of claim deadline shall be the longer of one-hundred eighty (180) days after the petition was filed or ninety (90) days after this Notice of Assets is served or as otherwise provided in the Federal Rules. Late claims will not be allowed. A proof of claim may be filed either electronically or as a paper document. For information on how to file a claim, visit the United States Bankruptcy Court – District of Delaware website at (http://www.deb.uscourts.gov), and click on the "Programs & Services" tab – Claims Information.

*Una O'Boyle*

Una O'Boyle, Clerk of Court

Dated: 1/29/21  
(VAN-043)

017059

53004017076016

Certificate Number
PC - 21

Number of Shares
--28,986--

SEE REVERSE SIDE FOR LEGEND

## INSIKT, INC.
### SERIES C PREFERRED STOCK
**PAR VALUE $0.0001 PER SHARE**

THIS CERTIFIES THAT _The Brian H. Zalaznick Revocable Trust Dated 8/21/1999, as amended_ is the registered holder of _Twenty Eight Thousand Nine Hundred Eighty Six (28,986)_ Shares of Series C Preferred Stock, par value $0.0001 per share, transferable only on the books of the Corporation by the holder hereof in person or by Attorney upon surrender of this Certificate properly endorsed.

This Certificate and the shares represented hereby shall be held subject to all of the provisions of the Certificate of Incorporation and the Bylaws of the Corporation and any amendments thereto, a copy of each of which is on file at the office of the Corporation and made a part hereof as fully as though the provisions of said Certificate of Incorporation and Bylaws were imprinted in full on this Certificate, to all of which the holder of this Certificate, by acceptance hereof, assents and agrees to be bound.

In Witness Whereof, the said Corporation has caused this Certificate to be signed by its duly authorized officers this 17th day of November, 2016.

_____
PRESIDENT

_____
SECRETARY



Certificate Number
C - 91

SEE REVERSE SIDE FOR LEGEND

**INSIKT, INC.**
COMMON STOCK
PAR VALUE $0.0001 PER SHARE

Number of Shares
--55,000--

THIS CERTIFIES THAT _____Brian Zalaznick_____ is the registered holder of _____Fifty Five Thousand (55,000)_____ Shares of Common Stock, par value $0.0001 per share, transferable only on the books of the Corporation by the holder hereof in person or by Attorney upon surrender of this Certificate properly endorsed.

This Certificate and the shares represented hereby shall be held subject to all of the provisions of the Certificate of Incorporation and the Bylaws of the Corporation and any amendments thereto, a copy of each of which is on file at the office of the Corporation and made a part hereof as fully as though the provisions of said Certificate of Incorporation and Bylaws were imprinted in full on this Certificate, to all of which the holder of this Certificate, by acceptance hereof, assents and agrees to be bound.

In Witness Whereof, the said Corporation has caused this Certificate to be signed by its duly authorized officers this 28th day of April, 2017.

_____
PRESIDENT

_____
SECRETARY

**BAKER BOTTS** L.L.P.

1001 PAGE MILL ROAD
BUILDING ONE, SUITE 200
PALO ALTO, CALIFORNIA
94304-1007

TEL +1 650.739.7500
FAX +1 650.739.7699
BakerBotts.com

AUSTIN
BEIJING
BRUSSELS
DALLAS
DUBAI
HONG KONG
HOUSTON

LONDON
MOSCOW
NEW YORK
**PALO ALTO**
RIYADH
SAN FRANCISCO
WASHINGTON

January 3, 2017

VIA FEDEX

Brian H. Zalaznick
509 Pixie Trail
Mill Valley, CA 94941

Dear Brian:

      Enclosed please find an Insikt, Inc. Series C Preferred Stock Certificate for The Brian H. Zalaznick Revocable Trust Dated 8/21/1999, as amended.

Very truly yours,

*Nanette C Doiron*

Nanette C Doiron
Legal Secretary

ND:ND

Active 31785479.1

Hogan Lovells US LLP
4085 Campbell Avenue
Suite 100
Menlo Park, CA 94025
T +1 650 463 4000
F +1 650 463 4199
www.hoganlovells.com

# Hogan Lovells

January 19, 2016

*Via FedEx*

The Brian H. Zalaznick Revocable Trust Dated 8/21/1999, as amended
509 Pixie Trail
Mill Valley, CA 94941

      Re:   **Insikt, Inc. Series C Preferred Stock Certificate**

Dear Mr. Zalaznick:

Enclosed please find the following documents related to the purchase of shares of Series C Preferred stock:

| Certificate No. | Name | Shares |
|---|---|---|
| PC-15 | The Brian H. Zalaznick Revocable Trust Dated 8/21/1999, as amended | 28,986 |

A stock certificate receipt (the "Receipt") is also enclosed. Please sign the Receipt where indicated and return it to me in the self-addressed stamped envelope provided. Thank you for your attention to this matter.

Please feel free to contact me should you have any questions, my contact information is listed below.

Best regards,

*Marty Kennedy*
Marty Kennedy
Paralegal
john.kennedy@hoganlovells.com
D 650-463-4052
Enclosures

Hogan Lovells US LLP is a limited liability partnership registered in the District of Columbia. "Hogan Lovells" is an international legal practice that includes Hogan Lovells US LLP and Hogan Lovells International LLP, with offices in: Alicante Amsterdam Baltimore Beijing Brussels Caracas Colorado Springs Denver Dubai Dusseldorf Frankfurt Hamburg Hanoi Ho Chi Minh City Hong Kong Houston Johannesburg London Los Angeles Luxembourg Madrid Miami Milan Moscow Munich New York Northern Virginia Paris Philadelphia Prague Rio de Janeiro Rome San Francisco São Paulo Shanghai Silicon Valley Singapore Tokyo Ulaanbaatar Warsaw Washington DC Associated offices: Budapest Jakarta Jeddah Riyadh Zagreb. For more information see www.hoganlovells.com

\\042602/000003 - 1426798 v1

# EXHIBIT C-4

## ELECTION UNDER SECTION 83(b)
## OF THE INTERNAL REVENUE CODE OF 1986

The undersigned taxpayer hereby elects, pursuant to Sections 55 and 83(b) of the Internal Revenue Code of 1986, as amended, to include in taxpayer's gross income or alternative minimum taxable income, as the case may be, for the current taxable year the amount of any compensation taxable to taxpayer in connection with taxpayer's receipt of the property described below.

1. The name, address, taxpayer identification number and taxable year of the undersigned are as follows:

|  | TAXPAYER | SPOUSE |
|---|---|---|
| NAME: | Brian Zalaznick | Cindy Sterman |
| ADDRESS: | 509 Pipic Trail | 509 Pipic Trail |
|  | Mill Valley, CA 94941 | Mill Valley, CA 94941 |
| TAX ID NO.: | 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 | 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 |
| TAXABLE YEAR: | 2015 |  |

2. The property with respect to which the election is made is described as follows: 165,000 shares (the "Shares") of the Common Stock of Insikt, Inc. (the "Company").

3. The date on which the property was transferred is: 12/10/15.

4. The property is subject to the following restrictions:

   The Shares may not be transferred and are subject to forfeiture under the terms of an agreement between the taxpayer and the Company. These restrictions lapse upon the satisfaction of certain conditions contained in such agreement.

5. The Fair Market Value at the time of transfer, determined without regard to any restriction other than a restriction which by its terms shall never lapse, of such property is: $ 120,450.00

6. The amount (if any) paid for such property is: $ 120,450.00

The undersigned has submitted a copy of this statement to the person for whom the services were performed in connection with the undersigned's receipt of the above-described property. The transferee of such property is the person performing the services in connection with the transfer of said property.

The undersigned understands that the foregoing election may not be revoked except with the consent of the Commissioner.

Dated: 12/10, 2015                              _____
                                                Taxpayer

The undersigned spouse of taxpayer joins in this election.

Dated: 12/10, 2015                              _____
                                                Spouse of Taxpayer

6112887_4.DOC

# EXHIBIT A

## 2012 EQUITY INCENTIVE PLAN

### EXERCISE NOTICE

Insikt, Inc.
225 Bush Street, Suite 1840
San Francisco, California 94104

Attention: Chief Executive Officer

1. <u>Exercise of Option</u>. Effective as of today, **12/10/15**, the undersigned ("Participant") hereby elects to exercise Participant's option (the "Option") to purchase **165,000** shares of the Common Stock (the "Shares") of Insikt, Inc. (the "Company") under and pursuant to the 2012 Equity Incentive Plan (the "Plan") and the Stock Option Agreement – Early Exercise dated December 4, 2015 (the "Option Agreement").

2. <u>Delivery of Payment</u>. Participant herewith delivers to the Company the full purchase price of the Shares, as set forth in the Option Agreement, and any and all withholding taxes due in connection with the exercise of the Option.

3. <u>Representations of Participant</u>. Participant acknowledges that Participant has received, read and understood the Plan and the Option Agreement and agrees to abide by and be bound by their terms and conditions.

4. <u>Rights as Stockholder</u>. Until the issuance of the Shares (as evidenced by the appropriate entry on the books of the Company or of a duly authorized transfer agent of the Company), no right to vote or receive dividends or any other rights as a stockholder shall exist with respect to the Common Stock subject to an Award, notwithstanding the exercise of the Option. The Shares shall be issued to Participant as soon as practicable after the Option is exercised in accordance with the Option Agreement. No adjustment shall be made for a dividend or other right for which the record date is prior to the date of issuance except as provided in Section 13 of the Plan.

5. <u>Company's Right of First Refusal</u>. Before any Shares held by Participant or any transferee (either being sometimes referred to herein as the "Holder") may be sold or otherwise transferred (including transfer by gift or operation of law), the Company or its assignee(s) shall have a right of first refusal to purchase the Shares on the terms and conditions set forth in this Section 5 (the "Right of First Refusal").

(a) <u>Notice of Proposed Transfer</u>. The Holder of the Shares shall deliver to the Company a written notice (the "Notice") stating: (i) the Holder's bona fide intention to sell or otherwise transfer such Shares; (ii) the name of each proposed purchaser or other transferee ("Proposed Transferee"); (iii) the number of Shares to be transferred to each Proposed Transferee; and (iv) the bona fide cash price or other consideration for which the Holder proposes to transfer the Shares (the "Offered Price"), and the Holder shall offer the Shares at the Offered Price to the Company or its assignee(s).

(b) <u>Exercise of Right of First Refusal</u>.  At any time within thirty (20) days after receipt of the Notice, the Company and/or its assignee(s) may, by giving written notice to the Holder, elect to purchase all, but not less than all, of the Shares proposed to be transferred to any one or more of the Proposed Transferees, at the purchase price determined in accordance with subsection (c) below.

(c) <u>Purchase Price</u>.  The purchase price ("Purchase Price") for the Shares purchased by the Company or its assignee(s) under this Section 5 shall be the Offered Price.  If the Offered Price includes consideration other than cash, the cash equivalent value of the non-cash consideration shall be determined by the Board of Directors of the Company in good faith.

(d) <u>Payment</u>.  Payment of the Purchase Price shall be made, at the option of the Company or its assignee(s), in cash (by check), by cancellation of all or a portion of any outstanding indebtedness of the Holder to the Company (or, in the case of repurchase by an assignee, to the assignee), or by any combination thereof within thirty (30) days after receipt of the Notice or in the manner and at the times set forth in the Notice.

(e) <u>Holder's Right to Transfer</u>.  If all of the Shares proposed in the Notice to be transferred to a given Proposed Transferee are not purchased by the Company and/or its assignee(s) as provided in this Section 5, then the Holder may sell or otherwise transfer such Shares to that Proposed Transferee at the Offered Price or at a higher price, provided that such sale or other transfer is consummated within one hundred and twenty (120) days after the date of the Notice, that any such sale or other transfer is effected in accordance with any applicable securities laws and that the Proposed Transferee agrees in writing that the provisions of this Section 5 shall continue to apply to the Shares in the hands of such Proposed Transferee.  If the Shares described in the Notice are not transferred to the Proposed Transferee within such period, a new Notice shall be given to the Company, and the Company and/or its assignees shall again be offered the Right of First Refusal before any Shares held by the Holder may be sold or otherwise transferred.

(f) <u>Exception for Certain Family Transfers</u>.  Anything to the contrary contained in this Section 5 notwithstanding, the transfer of any or all of the Shares during the Participant's lifetime (except in connection with a divorce, dissolution, legal separation or annulment) or on the Participant's death by will or intestacy to the Participant's immediate family or a trust for the benefit of the Participant's immediate family shall be exempt from the provisions of this Section 5.  "Immediate Family" as used herein shall mean spouse, child, father, mother, brother, sister, father-in-law, mother-in-law, brother-in-law, sister-in-law, grandfather, grandmother, grandchild, cousin, aunt, uncle, niece, nephew, stepchild, god-son, god-daughter, or to a trust or other similar estate planning vehicle for the benefit of the Participant or any such person or to an entity controlled by the Immediate Family.  In such case, the transferee or other recipient shall receive and hold the Shares so transferred subject to the provisions of this Section 5, and there shall be no further transfer of such Shares except in accordance with the terms of this Section 5.

(g) <u>Termination of Right of First Refusal</u>.  The Right of First Refusal shall terminate as to any Shares upon the earlier of (i) the first sale of Common Stock of the Company to the general public, or (ii) a Change in Control in which the successor corporation has equity securities that are publicly traded.

6. <u>Tax Consultation</u>.  Participant understands that Participant may suffer adverse tax consequences as a result of Participant's purchase or disposition of the Shares.  Participant represents that Participant has consulted with any tax consultants Participant deems advisable in connection with the purchase or disposition of the Shares and that Participant is not relying on the Company for any tax advice.

7. <u>Restrictive Legends and Stop-Transfer Orders.</u>

(a) <u>Legends</u>.  Participant understands and agrees that the Company shall cause the legends set forth below or legends substantially equivalent thereto, to be placed upon any certificate(s) evidencing ownership of the Shares together with any other legends that may be required by the Company or by state or federal securities laws:

THE SECURITIES REPRESENTED HEREBY HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933 (THE "ACT") AND MAY NOT BE OFFERED, SOLD OR OTHERWISE TRANSFERRED, PLEDGED OR HYPOTHECATED UNLESS AND UNTIL REGISTERED UNDER THE ACT OR, IN THE OPINION OF COUNSEL SATISFACTORY TO THE ISSUER OF THESE SECURITIES, SUCH OFFER, SALE OR TRANSFER, PLEDGE OR HYPOTHECATION IS IN COMPLIANCE THEREWITH.

THE SHARES REPRESENTED BY THIS CERTIFICATE ARE SUBJECT TO CERTAIN RESTRICTIONS ON TRANSFER AND A RIGHT OF FIRST REFUSAL HELD BY THE ISSUER OR ITS ASSIGNEE(S) AS SET FORTH IN THE EXERCISE NOTICE BETWEEN THE ISSUER AND THE ORIGINAL HOLDER OF THESE SHARES, A COPY OF WHICH MAY BE OBTAINED AT THE PRINCIPAL OFFICE OF THE ISSUER.  SUCH TRANSFER RESTRICTIONS AND RIGHT OF FIRST REFUSAL ARE BINDING ON TRANSFEREES OF THESE SHARES.

THE SHARES REPRESENTED BY THIS CERTIFICATE ARE SUBJECT TO RESTRICTIONS ON TRANSFER FOR A PERIOD OF TIME FOLLOWING THE EFFECTIVE DATE OF THE UNDERWRITTEN PUBLIC OFFERING OF THE COMPANY'S SECURITIES SET FORTH IN AN AGREEMENT BETWEEN THE ISSUER AND THE ORIGINAL HOLDER OF THESE SHARES AND MAY NOT BE SOLD OR OTHERWISE DISPOSED OF BY THE HOLDER PRIOR TO THE EXPIRATION OF SUCH PERIOD WITHOUT THE CONSENT OF THE COMPANY OR THE MANAGING UNDERWRITER.

(b) <u>Stop-Transfer Notices</u>.  Participant agrees that, in order to ensure compliance with the restrictions referred to herein, the Company may issue appropriate "stop transfer" instructions to its transfer agent, if any, and that, if the Company transfers its own securities, it may make appropriate notations to the same effect in its own records.

(c) <u>Refusal to Transfer</u>.  The Company shall not be required (i) to transfer on its books any Shares that have been sold or otherwise transferred in violation of any of the provisions of

this Exercise Notice or (ii) to treat as owner of such Shares or to accord the right to vote or pay dividends to any purchaser or other transferee to whom such Shares shall have been so transferred.

8. <u>Successors and Assigns</u>. The Company may assign any of its rights under this Exercise Notice to single or multiple assignees, and this Exercise Notice shall inure to the benefit of the successors and assigns of the Company. Subject to the restrictions on transfer herein set forth, this Exercise Notice shall be binding upon Participant and his or her heirs, executors, administrators, successors and assigns.

9. <u>Interpretation</u>. Any dispute regarding the interpretation of this Exercise Notice shall be submitted by Participant or by the Company forthwith to the Administrator, which shall review such dispute at its next regular meeting. The resolution of such a dispute by the Administrator shall be final and binding on all parties.

10. <u>Governing Law; Severability</u>. This Exercise Notice is governed by the internal substantive laws, but not the choice of law rules, of California. In the event that any provision hereof becomes or is declared by a court of competent jurisdiction to be illegal, unenforceable or void, this Exercise Notice shall continue in full force and effect.

11. <u>Entire Agreement</u>. The Plan and Option Agreement are incorporated herein by reference. This Exercise Notice, the Plan, the Restricted Stock Purchase Agreement, the Option Agreement and the Investment Representation Statement constitute the entire agreement of the parties with respect to the subject matter hereof and supersede in their entirety all prior undertakings and agreements of the Company and Participant with respect to the subject matter hereof, and may not be modified adversely to the Participant's interest except by means of a writing signed by the Company and Participant.

Submitted by:
PARTICIPANT

Signature: *[signed]*

Print Name: BRIAN ZALAZNICK

Address:
509 Pixie Trail
Mill Valley, CA 94941

Accepted by:
INSIKT, INC.

By: *[signed]*

Print Name: DRYDEN J. LIDDLE

Title: SECRETARY

Address:
225 Bush St. #1840
San Francisco, CA 94104

Date Received: 12/10/15

6112887_4.DOC

-4-