# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>Aura Financial Corporation,<br><br>Debtor. | Case No. 21-10016 (BLS)<br><br>Chapter 7 |
| In re:<br><br>Aura Equity Holdings LLC,<br><br>Debtor. | Case No. 21-10017 (BLS)<br><br>Chapter 7 |
| In re:<br><br>Insikt Acquisition LLC,<br><br>Debtor. | Case No. 21-10018 (BLS)<br><br>Chapter 7 |
| In re:<br><br>Insikt Servicing LLC,<br><br>Debtor. | Case No. 21-10019 (BLS)<br><br>Chapter 7<br><br>**Hearing Date:  April 21, 2021 at 9:15 a.m.**<br>**Objection Date:  April 14, 2021 at 4:00 p.m.** |

## MOTION OF CHAPTER 7 TRUSTEE FOR APPROVAL OF STIPULATION BETWEEN CHAPTER 7 TRUSTEE AND BRIDGE BANK REGARDING USE OF CASH COLLATERAL

Alfred T. Giuliano, in his capacity as the chapter 7 trustee (the "Trustee") of the estates (the "Estates") of the above-captioned debtors (collectively, the "Debtors"), respectfully requests the entry of an order approving the Stipulation Between Chapter 7 Trustee and Bridge Bank Regarding Use of Cash Collateral (the "Cash Collateral Stipulation")[1], a copy of which is attached hereto and incorporated herein as Exhibit "A", and authorizing the Trustee to implement the Cash Collateral Stipulation. In support hereof, the Trustee respectfully states the following:

---

[1] Capitalized terms used herein shall have the meanings ascribed in the Cash Collateral Stipulation unless otherwise defined.

\51367472\1 00600.9698.000/512790.000
03/19/2021

## JURISDICTION AND VENUE

1.     The United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper pursuant to 28 U.S.C. § 1409.

## BACKGROUND

2.     On January 9, 2021 (the "Petition Date"), the Debtors filed voluntary petitions in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") for relief under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code"), commencing the above-captioned bankruptcy cases (the "Bankruptcy Cases").

3.     On or about the Petition Date, the Office of the United States Trustee appointed the Trustee as the trustee to the Estates of the Debtors.

### Pre-Petition Debt

4.     Prior to the Petition Date, Bridge Bank, as lender, and debtors Aura Financial Corporation, Aura Equity Holdings LLC and Insikt Servicing LLC (collectively, "Borrowers"), as borrowers, entered into that certain Loan and Security Agreement dated as of December 2, 2019 (as amended from time to time, the "Loan Agreement").[2]  The Loan Agreement, together with certain warrants, intellectual property security agreements and related documents and instruments shall collectively be referred to herein as the "Loan Documents."

5.     As of the Petition Date, Bridge Bank asserted that it was owed $3,939,669.84 for principal, interest, fees and other costs and expenses as provided for in the Loan Documents (collectively, the "Prepetition Obligations").

---

[2] Non-debtor Aura Financing LLC is also a Borrower under the Loan Agreement.

6. Bridge Bank asserts that the Prepetition Obligations are secured by first priority liens (the "Prepetition Liens") on substantially all of the Borrowers' assets (collectively, the "Prepetition Collateral") including, without limitation, Cash Collateral (as defined in Section 363(a) of the Bankruptcy Code).

**Trustee's Need for Use of Cash Collateral to Fund Asset Sales**

7. The Trustee requires the ability to use Cash Collateral to recover, preserve, market and sell the Prepetition Collateral pursuant to anticipated sales under Section 363 of the Bankruptcy Code, or other methods of liquidating the Prepetition Collateral (collectively, the "Asset Sales").

8. Cash Collateral constitutes part of the Prepetition Collateral and may not be used absent compliance with Section 362(c)(2) of the Bankruptcy Code.

9. Bridge Bank is willing, subject to the terms and conditions set forth in the Cash Collateral Stipulation, to consent to the Trustee's use of Cash Collateral and other Prepetition Collateral to recover, preserve, and maintain the Prepetition Collateral and to conduct Asset Sales of the Prepetition Collateral.

10. The Trustee proposes to provide Bridge Bank with adequate protection in accordance with Sections 361 and 363 of the Bankruptcy Code. To that end, the Trustee and Bridge Bank have negotiated certain protections of Bridge Bank's interests in the Prepetition Collateral, as further described below and in the Cash Collateral Stipulation.

**Terms of Cash Collateral Stipulation**

11. The principal terms of the Cash Collateral Stipulation, *inter alia*, include the following:[3]

    a. Unless, within twenty (20) days after entry of an order of the Bankruptcy

---

[3] The terms of the Cash Collateral Stipulation control to the extent that any conflict with this summary.

Court approving the Cash Collateral Stipulation, the Trustee commences an adversary proceeding challenging the validity, perfection, priority, or enforceability of the Prepetition Liens or seeking to void, avoid, equitably subordinate, or otherwise challenge for any reason, the Prepetition Obligations or the Prepetition Liens, or assert any other claim against Bridge Bank or objection to allowance of any part of the Prepetition Obligations (any of the foregoing shall be referred to as a "Challenge"), the Trustee shall be deemed to stipulate that:

i. as of the Petition Date, the outstanding amount of the Prepetition Obligations was $3,939,669.84. Subject to the Trustee's right to commence a Challenge in the time provided herein, the Prepetition Obligations constitute allowed, legal, valid, binding, enforceable and non-avoidable obligations of the Borrowers, and are not subject to any offset, defense, counterclaim, avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or any other applicable law, and the Debtors and the Estates do not possess, and the Trustee shall not assert, hereby forever releases, and is forever barred from bringing any claim, counterclaim, setoff or defense of any kind, nature or description which would in any way affect the validity, enforceability and non-avoidability of any of the Prepetition Obligations;

ii. the Prepetition Liens constitute valid, enforceable, duly perfected, first-priority liens upon and security interests in the Prepetition Collateral. Subject to the Trustee's right to commence a Challenge in the time provided herein, the Borrowers do not possess and the Trustee will not assert any claim, counterclaim, setoff or defense of any kind, nature or description which would in any way affect the validity, enforceability and non-avoidability of any of Bridge Bank's liens, claims or security in the Prepetition Collateral;

iii. the Prepetition Liens are not voidable under the provisions of the Bankruptcy Code or applicable non-bankruptcy law;

iv. Bridge Bank shall be deemed to be released by the Trustee on behalf of the Estates from any and all claims, causes of action, litigation claims, avoidance actions, and any other debts, obligations, rights, suits, damages, expenses, actions, remedies, judgments, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, fixed or contingent, matured or unmatured, whether in law, at equity, whether for tort, contract, or otherwise, related in any way to the Debtors or their properties or the acquisition thereof, the Prepetition Obligations, or the Prepetition Liens arising at any time prior to the entry of an order approving the Cash Collateral Stipulation; *provided, however*, that should the Trustee initiate a

4

        Challenge within twenty (20) days after entry of an order of the Bankruptcy Court approving the Cash Collateral Stipulation, then notwithstanding any provision of the Cash Collateral Stipulation, the Cash Collateral Stipulation shall terminate immediately and the Parties shall have no obligation or responsibility under, and shall not be bound to or required to honor, any of the terms or conditions of the Cash Collateral Stipulation, except that Cash Collateral may be used to pay expenses incurred by the Trustee in accordance with the Cash Collateral Stipulation prior to the initiation of a Challenge; and

b. As adequate protection of Bridge Bank's interest, and solely to the extent of any diminution in value, commencing from the Petition Date, that has resulted or results from the Trustee's use of Cash Collateral, and as an inducement to Bridge Bank to permit the Trustee's use of Cash Collateral as provided herein and agreed amongst the Parties, the Trustee grants, assigns, and pledges to Bridge Bank post-petition replacement security interests in and liens on (collectively, the "Replacement Liens"), subject to the Carve-Out (as defined below), all of the Borrowers' property (but excluding (i) all causes of action of the Estates under Chapter 5 of the Bankruptcy Code; and (ii) that certain Silicon Valley Bank account owned by Insikt Servicing LLC (Account No. 5524) (collectively, the "Adequate Protection Collateral" and, together with the Prepetition Collateral, the "Collateral")) whether acquired before or after the Petition Date. The Replacement Liens granted to Bridge Bank as adequate protection shall be valid, perfected, and enforceable against the Adequate Protection Collateral without further filing or recording of any document or instrument or the taking of any further actions.

c. The Trustee is willing to pursue Asset Sales on the condition that he be authorized to pay all costs of administering the Estates (including the expenses related to recovering, preserving, marketing, and selling, or otherwise disposing of the Collateral) from Cash Collateral, and the Asset Sales will provide some benefit to the Estates. To that end, Bridge Bank consents and agrees that the Trustee shall be authorized, subject to the terms and conditions set forth herein, to use Cash Collateral to pay for the expenses of the Asset Sales and administration of these Bankruptcy Cases identified in, and in the amounts not exceeding, the budget (the "Budget") attached as **Exhibit A** to the Cash Collateral Stipulation (the "Budgeted Expenses"), and such other expenses as are specifically approved by Bridge Bank. The Trustee shall provide Bridge Bank with detailed reporting as set forth in **Exhibit B** to the Cash Collateral Stipulation (the "Required Reporting").

d. Bridge Bank also expressly agrees that the liens and security interests of Bridge Bank shall be subject to a carve-out for the professional fees and expenses of the Trustee's counsel, Cozen O'Connor, including fees related to recovering, preserving, marketing, selling, or otherwise disposing of the Collateral, to the extent allowed and awarded by the Bankruptcy Court

5

pursuant to Sections 330 and 331 of the Bankruptcy Code, and the other costs and expenses of Trustee's counsel related to the Asset Sales, in each case to the extent incurred prior to the delivery of a Termination Notice (as defined below) and not to exceed $100,000.00 (the "Professional Carve-Out").  For the avoidance of doubt, the Professional Carve-Out shall be equal to $100,000.00, and shall cover fees and expenses incurred at any time during the Bankruptcy Cases.  Bridge Bank agrees and consents to the use by the Trustee of Cash Collateral for the payment of the Professional Carve-Out. Bridge Bank acknowledges that the amount budgeted for professional fees in the Budget shall not be deemed a cap on the amount of professional fees for which the Trustee may seek Bankruptcy Court approval; *provided, however*, that any such Trustee professional fees exceeding the amounts contained in the Budget shall be excluded from the Professional Carve-Out. Notwithstanding anything to the contrary herein: (i) in no event shall the fees incurred in connection with investigating the amount of the Prepetition Obligations or the validity, extent, priority, or avoidability of Prepetition Liens exceed $10,000.00; (ii) none of the Professional Carve-Out funds may be used to commence or prosecute a Challenge or any objection or action adverse to Bridge Bank; and (iii) Bridge Bank reserves its rights to review and object to the reasonableness of fees in connection with the professional fee applications filed with the Bankruptcy Court.  Any proceeds of the sale of Collateral by the Trustee in excess of the Prepetition Obligations and all liens and security interests thereon shall be subject to a carve-out for payment of the Trustee's allowed professional fees and expenses which exceed the Budgeted Expenses and Professional Carve-Out, if any, and the Trustee's statutory commission.

e.  Bridge Bank also expressly agrees that the liens and security interests of Bridge Bank shall be subject to carve-out for any commission earned by the Trustee solely related to recovering, preserving, marketing, selling, or otherwise disposing of the Collateral, pursuant to Section 326(a) of the Bankruptcy Code (the "Trustee Carve-Out").

f.  Bridge Bank agrees to carve out from its liens and security interests and allow the Estates to retain solely from the gross proceeds of any Asset Sale, free and clear of such claims, liens, and interests, ten percent (10%) of the cash proceeds generated from any sale of any Collateral, which shall be paid to the Trustee at the closing of any Asset Sale, and be available for distribution in accordance with the priorities set forth in the Bankruptcy Code. The carve-out as described in this paragraph, together with the [Budgeted Expenses], Professional Carve-Out and the Trustee Carve-Out, shall be referred to herein as the "Carve-Out."

g.  The Trustee shall pay to Bridge Bank within five (5) business days of the Trustee's receipt of proceeds at any closing of an Asset Sale, or on account of any other collection or recovery of the Collateral, an amount equal to the

      gross cash proceeds of the Asset Sales, or other amounts collected or recovered by the Trustee, less the Carve-Out. Such payments (but only to the extent thereof) shall be in full and final satisfaction of Bridge Bank's liens on and security interests in the Collateral. To the extent that the Prepetition Obligations exceed Bridge Bank's recovery from the Asset Sales and other collections of the Collateral, Bridge Bank shall have an allowed, general unsecured claim against the Estates for the amount of the deficiency and shall file a proof of claim for such deficiency no later than sixty (60) days after the Trustee provides Bridge Bank and its counsel written notice (a copy of which notice the Trustee shall filed in the Bankruptcy Cases) stating that the Collateral has been sold, abandoned, or otherwise disposed of; provided, however, that Bridge Bank hereby agrees that it will not share in any distribution of the Carve-Out with respect to Bridge Bank's claims, and agrees to subordinate its deficiency claim to the claims of general unsecured creditors to the extent that any distributions would be made out of the Carve-Out.

h. The automatic stay under Section 362(a) of the Bankruptcy Code shall be modified to the extent necessary to permit Bridge Bank to receive, collect, and apply payments and proceeds in respect of the Collateral in accordance with, and to otherwise implement and comply with, the terms and provisions of the Cash Collateral Stipulation. The Trustee, by virtue of approval of the Cash Collateral Stipulation, shall be authorized to make and receive payments to and from Bridge Bank via wire transfer.

*See* Cash Collateral Stipulation, ¶ 10(a)-(h).

12. The Cash Collateral Stipulation shall expire by its terms on May 27, 2021, or such later date as the Parties may agree in writing (the "<u>Scheduled Termination Date</u>"). *See* Cash Collateral Stipulation, ¶ 11.

13. Bridge Bank shall have the right to terminate the Trustee's use of Cash Collateral prior to the Scheduled Termination Date upon five (5) business days' prior written notice (the "<u>Termination Notice</u>") to the Trustee and the Office of the United States Trustee for the District of Delaware if: (a) the Trustee defaults with respect to any term or provision of the Cash Collateral Stipulation and fails to cure such default within five (5) business days after receiving written notice of default by Bridge Bank; (b) an order is entered dismissing any of the

7

Bankruptcy Cases; (c) the Trustee commences a Challenge; or (d) the Trustee files a motion seeking to amend, modify, or supplement the terms of the Cash Collateral Stipulation without the prior written consent of Bridge Bank or an order is entered reversing, amending, supplementing, staying, vacating, or otherwise modifying the terms of the Cash Collateral Stipulation without the prior written consent of Bridge Bank. *See* Cash Collateral Stipulation, ¶ 12.

14. Upon the occurrence of any of the events specified in paragraph 12 of the Cash Collateral Stipulation (each a "Termination Event") and following the delivery of a Termination Notice, the Trustee may seek an emergency hearing before the Bankruptcy Court for the purpose of contesting whether a Termination Event has occurred. Upon the earlier of the: (i) Scheduled Termination Date; and (ii) termination of the Cash Collateral Stipulation following a Termination Event in accordance with paragraph 13 of the Cash Collateral Stipulation, the Trustee's authority to continue to use Cash Collateral shall automatically cease, without further order or relief from the Bankruptcy Court, provided, however, that the Trustee's authority to use Cash Collateral shall continue to allow payment of all [Budgeted Expenses] incurred or accrued through the date of termination, including payment of the Trustee's professional fees, in each case subject to the Budget, which shall remain subject to allowance pursuant to an order of the Bankruptcy Court. *See* Cash Collateral Stipulation, ¶ 13.

## SUMMARY OF RELIEF REQUESTED

15. The Trustee respectfully requests that the Bankruptcy Court enter an Order, substantially in the form attached hereto as Exhibit "B", approving the Cash Collateral Stipulation and authorizing the Trustee to take any all actions necessary to implement the Cash Collateral Stipulation.

\51367472\1 00600.9698.000/512790.000
03/19/2021

**APPLICABLE AUTHORITY**

16. The Bankruptcy Court has the authority to grant the relief requested in this motion pursuant to section 105 of the Bankruptcy Code, and Federal Rule of Bankruptcy Procedure 9019. Section 105(a) provides that "[t]he court may issue any order . . . that is necessary or appropriate to carry out the provisions of this title."

17. Section 704(a) of the Bankruptcy Code provides that the Trustee shall collect and reduce to money the property of the Estates; however in the absence of the Cash Collateral and reimbursement provided in the Cash Collateral Stipulation, the Trustee will not have the ability to administer the Estates for the benefit of creditors, including Bridge Bank. Accordingly, an order approving the Cash Collateral Stipulation pursuant to section 105(a) of the Bankruptcy Code should be issued as necessary and appropriate to carry out the provisions of title 11, namely the fulfillment of the Trustee's duties under section 704.

18. The Cash Collateral Stipulation constitutes a settlement and allowance of Bridge Bank's claims and rights to the Collateral, and Rule 9019 of the Federal Rules of Bankruptcy Procedure grants the Bankruptcy Court authority to approve settlements of claims and controversies after notice and a hearing. The United States Court of Appeals for the Third Circuit has emphasized that "to minimize litigation and expedite the administration of a bankruptcy estate, '[c]ompromises are favored in bankruptcy.'" *Myers v. Martin (In re Martin)*, 91 F. 3d 389, 393 (3d Cir. 1996) (quoting 9 COLLIER ON BANKRUPTCY ¶ 9019.03[1] (15th ed. 1993)). The approval of compromises and settlements is committed to the sound discretion of the bankruptcy court. *See, e.g., In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997).

19. Before approving a settlement under Rule 9019, a court must determine whether "the compromise is fair, reasonable, and in the interests of the estate." *In re Marvel Entm't*

*Group, Inc.*, 222 B.R. 243, 249 (D. Del. 1998) (quoting *Louise's*, 211 B.R. at 801).  To reach such a determination, the court must assess the value of the claim that is being settled and balance it against the value to the estate of the approval of the settlement.  *Martin*, 91 F.3d at 393.  In striking this balance, the court should consider the following factors: (a) the probability of success in the litigation; (b) the complexity, expense and likely duration of the litigation; (c) the possibilities of collecting on any judgment which might be obtained; (d) all other factors relevant to making a full and fair assessment of the wisdom of the proposed compromise; and (e) whether the proposed compromise is fair and equitable to the debtors, their creditor, and other parties in interest.  *Protective Comm. for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-425 (1968).  *See also Martin*, 91 F.3d at 393.

20. Fundamental to the process of evaluating proposed settlements is "the need to compare the terms of the compromise with the likely rewards of litigation."  *TMT Trailer Ferry*, 390 U.S. at 425.  The *TMT* rule does not require the Bankruptcy Court to hold a full evidentiary hearing before a compromise can be approved.  Rather, the Bankruptcy Court's obligation is "to canvas the issues and see whether the settlement 'falls below the lowest point in a range of reasonableness.'"  10 COLLIER ON BANKRUPTCY, ¶ 9019.2, 9019-4 (15th ed.) (quoting *In re Drexel Lambert Group, Inc.*, 134 B.R. 493 (Bankr. S.D.N.Y. 1991)).

21. The Cash Collateral Stipulation provides for the Trustee's use of Cash Collateral as provided for in section 363(c)(2)(A) of the Bankruptcy Code.  Bridge Bank has consented to same, subject to the terms and conditions of the Cash Collateral Stipulation.  11 U.S.C. § 363(c)(2)(A).

## **ANALYSIS**

22. The Trustee submits that entering into the Cash Collateral Stipulation is in the best interest of the Estates and the Debtors' creditors. The Cash Collateral Stipulation would provide the Trustee with funds to preserve, market, and attempt to sell or otherwise liquidate the Collateral. If the Trustee is successful in liquidating the Collateral, a percentage of the proceeds from that liquidation will be available for the cost of administration and possible distribution. Without these funds, the Trustee would not be able to preserve, market, and attempt to sell or otherwise liquidate the Collateral, and the Debtors' unsecured creditors would have no prospect for payment therefrom.

23. From the Trustee's perspective, gaining the ability to use Collateral, including Cash Collateral, subject to the terms and conditions of the Cash Collateral Stipulation is critical to his ability to administer the Estates and liquidate the Debtors' assets in an expeditious and prudent manner. The Trustee is satisfied that under the Loan Documents, the Prepetition Obligations constitute legal, valid, binding obligations of the Estates, enforceable in accordance with their terms, and are secured by valid, enforceable, binding, perfected and non-avoidable first-priority liens and security interests granted by the Debtors to Bridge Bank upon and in the Collateral. The Cash Collateral Stipulation reflects a settlement of the Prepetition Obligations and Bridge Bank's rights in the Collateral, and the Trustee believes that such settlement is far preferable to expensive and time-consuming litigation with Bridge Bank and/or a possible inability to use Collateral including Cash Collateral. For these reasons, the Trustee's entry into the Cash Collateral Stipulation is well within the reasonable exercise of his business judgment.

24. Based on the foregoing, the Trustee respectfully submits that the Bankruptcy Court should approve the Cash Collateral Stipulation as being in the best interests of the Estates,

and authorize the Trustee to take any and all actions necessary to implement the Cash Collateral Stipulation.

## NOTICE

25. Notice of this Motion, including a copy of the Motion, is being given to: (i) the Office of the United States Trustee for the District of Delaware, (ii) counsel for Bridge Bank, (iii) all other secured creditors listed on the Debtors' Schedules or having asserted a lien against the Debtors' property; (iv) the twenty largest unsecured creditors as identified on the claims docket for each Debtor; and (v) all parties requesting such notice pursuant to Bankruptcy Rule 2002 as of the date hereof. In light of the nature of the relief requested herein, the Trustee respectfully requests a determination by the Bankruptcy Court that such limited notice as described in this paragraph (the "Notice") is adequate and that no other or further notice need be given.

WHEREFORE, the Trustee respectfully requests that the Bankruptcy Court enter an order substantially in the form attached as Exhibit "B": (i) approving the Cash Collateral Stipulation; (ii) authorizing the Trustee to take any and all actions necessary to implement the Cash Collateral Stipulation; (iii) approving the adequacy of the Notice described herein; and (iv) granting such further relief as may be appropriate.

|  |  |
|---|---|
| Dated: March 19, 2021 | COZEN O'CONNOR |
|  | */s/ John T. Carroll, III* |
|  | _____ |
|  | John T. Carroll, III (DE No. 4060) |
|  | 1201 N. Market Street |
|  | Suite 1001 |
|  | Wilmington, DE 19801 |
|  | Telephone: (302) 295-2000 |
|  | Facsimile: (302) 295-2013 |
|  | jcarroll@cozen.com |
|  |  |
|  | Eric L. Scherling, Esq. (*not admitted in DE*) |
|  | Cozen O'Connor |
|  | One Liberty Place |
|  | 1650 Market Street |
|  | Suite 2800 |
|  | Philadelphia, PA 19103 |
|  | Telephone:  (215) 665-2042 |
|  | Facsimile:   (215) 701-2081 |
|  | escherling@cozen.com |
|  |  |
|  | *Counsel to the Chapter 7 Trustee,* |
|  | *Alfred T. Giuliano* |

13